CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 29 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| SHANA L. MARON, et al., ) | Civil Action No. 7:08-cv-00579 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Memorandum Opinion |
| VIRGINIA POLYTECHNIC INST. & ) | |
| STATE UNIV., ) | |
| ) | By: Hon. James C. Turk |
| Defendant, ) | Senior United States District Judge |

This matter comes before the Court on Plaintiffs Shana L. Maron's and Getra Hanes' Motion for Liquidated Damages and Defendant Virginia Polytechnic Institute & State University's ("Virginia Tech") Motion to Set Aside the Verdict/Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure (ECF Nos. 196 and 197). For the reasons stated below, the Plaintiffs' motion is DENIED, Virginia Tech's motion for Judgment as a Matter of Law is GRANTED in part and DENIED in part, and Virginia Tech's motion for a New Trial is GRANTED.

I.     Factual Background and Procedural History

Plaintiff Shana Maron ("Maron") filed suit against Virginia Tech on October 7, 2008 alleging that Virginia Tech discriminated against her and other similarly situated female employees in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), et seq. and that Virginia Tech retaliated against her in violation of the EPA, 29 U.S.C. § 215(a)(3), et seq. Maron brought her EPA suit under the Fair Labor Standards Act representative action provision, 29 U.S.C. § 216(b). Upon receiving leave of this Court to file a second amended complaint, on July 24, 2009, Maron added sex discrimination and retaliation claims against Virginia Tech for

violations of Title VII, 42 U.S.C. §2000e-2–3. On July 21, 2009, Plaintiff Greta Hanes opted into Plaintiff Maron's EPA collective action suit.

Plaintiffs' EPA claim alleges that Virginia Tech unjustly compensated Maron and similarly situated female employees on the basis of their gender "by compensating them at a rate less than [that] which it pays similarly situated male employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions." *Second Am. Compl.*, at ¶ 2. Plaintiffs' Title VII claim alleges that this unequal pay scheme constitutes sex discrimination. *Second Am. Compl.*, at ¶ 5. Maron's retaliation claim alleges that Virginia Tech constructively reprimanded her, required her to achieve impossible performance benchmarks or risk termination, imposed unreasonable work conditions on her, and denied her important training opportunities. (ECF No. 105, at 16).

A jury trial commenced in this Court on April 12, 2011 and ended on April 14, 2011. At the close of all the evidence, the Court found as a matter of law that Virginia Tech did not willfully discriminate against Plaintiff Erin Hofberg and entered judgment as a matter of law for Virginia Tech on her EPA claim because it was time barred.[1] The jury returned a verdict in favor of Maron on her EPA claim and Title VII retaliation claim, awarding her $25,000 in back pay under the EPA and $61,000 in damages for the retaliation claim. The jury returned a verdict in favor of Hanes on her EPA claims, awarding her back pay in the amount of $15,000.

## II. Standards of Review

### a. Liquidated Damages

Section 216(b) of the Fair Labor Standards Act provides that an employer "shall be liable to [an employee] affected in the amount of their unpaid minimum wages, or their unpaid

---

[1] Hofberg had initiated her EPA claim against Virginia Tech outside of the normal two-year statutory limitations period, but within the three-year period allowed for willful discrimination. Upon finding that there was no evidence of willful discrimination, the Court was bound to dismiss Hofberg's claim as untimely.

2

overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Portal-to-Portal Act provides a defense to § 216:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. A trial court is within its discretion to deny liquidated damages to an EPA plaintiff if the employer acted in good faith and had reasonable grounds for believing its acts conformed with the EPA. *Id.*; *Brinkley-Obu v. Hughes Training Inc.*, 36 F.3d 336, 357 (4th Cir. 1994).

### b. Motion for Judgment as a Matter of Law

A motion for judgment as a matter of law should be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for [the prevailing] party." Fed. R. Civ. P. 50(a)(1). The Court may *not* weigh the evidence or appraise the credibility of witnesses in making a Rule 50 determination, but must view the evidence in the light most favorable to the non-moving party and draw legitimate inferences in its favor. *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir. 1999); *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992). A court may grant such motions only if, "viewing the evidence most favorable to the party opposing the motions, a reasonable trier of fact could draw only one conclusion." *Walker v. Pettit Const. Co., Inc.*, 605 F.2d 128, 130 (4th Cir. 1979).

### c. Motion for a New Trial

Rule 59(a) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues." A trial court may set aside the verdict and order a new trial if the verdict: (1) is against the clear weight of the evidence; (2) is

3

based upon false evidence; or (3) will result in a miscarriage of injustice. *Cline v. Wal-Mart Stores Inc.* 144 F.3d 294, 301 (4th Cir. 1998); *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891 (4th Cir. 1980). In contrast to Rule 50 motions for judgment as a matter of law, Rule 59 allows the court to weigh the evidence and consider the credibility of the witnesses. *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010).

### III. Analysis

#### 1. Liquidated Damages

If Virginia Tech acted in good faith and had reasonable grounds for believing its acts conformed to the EPA, liquidated damages are improper. *See* 29 U.S.C. § 260; *Brinkley-Obu*, 36 F.3d at 357. To demonstrate good faith, Virginia Tech must meet a "plain and substantial burden" to show that its failure to obey the statute was *either* in good faith *or* based on such reasonable grounds that compensatory damages would be unfair. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (internal quotations omitted); *Brinkley-Obu*, 26 F.3d at 357–58 (both holding that it is within the trial court's discretion to deny liquidated damages if it is satisfied that the employer has met only one of the two prongs). The "good faith" defense requires an objective, not subjective, good faith. *Mayhew*, 125 F.3d at 220 (citing *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 661–62 (4th Cir. 1969)).

The evidence adduced at trial demonstrates to the Court that Virginia Tech objectively acted in good faith and based on such reasonable grounds that liquidated damages would be unfair. The evidence established that Virginia Tech had overt and clear anti-discrimination policies. *Trial Tr.*, at 418. Anti-discrimination training was required for all employees in University Development. *Id.* at 132, 389–90, 483. In setting initial salaries, Virginia Tech reviewed available data to ensure that salaries conformed to the market and consulted with an in-

house compensation analyst to review fundraiser salaries. *Id.* at 473, 478, 481. Furthermore, the Office of Federal Contracts Compliance conducted a civil rights audit of Virginia Tech in 2010 and found that none of Virginia Tech's compensation practices violated federal law. *Id.* at 460–61.

Virginia Tech's intensive annual review of the market for fundraiser salaries and mandatory anti-discrimination training are strong evidence that Virginia Tech made reasonable efforts to comply with EPA requirements.[2] A federal civil rights audit recently confirmed that Virginia Tech's policies are compliant with federal law. Objectively, Virginia Tech acted in good faith and based their compensation decisions on such reasonable grounds that liquidated damages would be unfair. Accordingly, Plaintiffs' motion for liquidated damages will be denied.

b. **Judgment as a Matter of Law**

i. **EPA Disparate Treatment Claims**

Under Rule 50, the Court must inquire whether a reasonable jury, drawing all facts and inferences from the evidence admitted at trial, could have found for the Plaintiffs. Even if the Court feels the *weight* of the evidence favored Virginia Tech, if there was even a modicum of evidence from which a jury could assign liability, judgment as a matter of law is improper. At the outset, the Court must reiterate, as it has held throughout these proceedings, that Plaintiffs have indeed established a prima facie case of discrimination under the EPA. The parties stipulated before trial that Virginia Tech paid three similarly situated male comparators more than Plaintiffs, and paid five male comparators less. The Plaintiffs assert that the fact that

---

[2] Plaintiffs' forcefully argue that the jury's finding that Virginia Tech willfully retaliated against Maron precludes a finding that Virginia Tech acted in good faith. Notwithstanding the jury's verdict, the evidence adduced at trial does not support a finding that Virginia Tech willfully retaliated against Maron. The Court is fully satisfied that Virginia Tech acted in good faith and had reasonable grounds to believe it did not violate the law.

5

Virginia Tech paid some male comparators more allows them to present their case to the jury. The Court has repeatedly found that Fourth Circuit precedent supports this assertion. *See Brinkley-Obu*, 36 F.3d at 344.

Virginia Tech argues that because it also paid Plaintiffs more than some males, Plaintiffs' EPA claims fail as a matter of law. Virginia Tech asserts that "[f]or this Court to adopt Plaintiffs' interpretation of the Equal Pay Act, any employee, male or female, earning less than one similarly-situated comparator of the opposite gender, could hale his or her employer into Court and establish a prima facie EPA violation." *Def.'s Mem.*, ECF. No. 198, at 6. Virginia Tech argues the Plaintiffs cannot establish a prima facie case in light of the fact that there were some lower paid male comparators. But, if the Plaintiffs' reading of *Brinkley-Obu* is tortured, so is Virginia Tech's. According to Virginia Tech's analysis, any employer paying any one similarly-situated comparator less than a plaintiff would be entitled to judgment as a matter of law. As long as an employer made sure that the several lowest paid employees were male, no female could ever establish a prima facie case of gender discrimination. The Court will not apply such a rule of law. Accordingly, there is no reason to upset the Court's earlier rulings that the Plaintiffs' case properly went before the jury.

The Court must next assess whether there was *any* evidence admitted at trial permitting a reasonable jury to find that Virginia Tech paid the Plaintiffs' less because they were women. At trial, Plaintiffs' produced evidence that, while Virginia Tech made salary determinations after consulting market data, Thimothy Corvin and Elizabeth Flanagan made salary decisions partly based on their personal subjective determinations of fairness and the employee's value. Both testified that, though they did not make salary determinations "on a whim," no written policy at Virginia Tech set the objective qualifications for salaries. Even if Flanagan or Corvin did not in

fact take gender into account, the process itself allowed for gender bias if the actors involved so desired. Virginia Tech's somewhat *ad hoc* salary determination process, which at least allowed for the *possibility* of subjective salary decisions, would also allow a reasonable jury, viewing the evidence in the light most favorable to the Plaintiffs', to infer liability.

Further, both the Plaintiffs' and Virginia Tech's experts testified that there was a measurable pay disparity between male and female fundraisers at Virginia Tech, even controlling for criteria such as age, experience, and education. Dr. Alexander Vekker testified that there was a fourteen pay percent disparity between men and women in University Development, the disparity was "statistically significant," and that the disparity was evidence of discrimination. Dr. Janet Thornton, whom Virginia Tech retained to rebut Dr. Vekker's testimony, testified that there was only an eight percent pay disparity, that the eight percent disparity was not "significant," and that statistical analyses could not demonstrate that Virginia Tech discriminated against women. Even though it was rebutted, Dr. Vekker's testimony could theoretically allow a reasonable jury to infer that Virginia Tech violated the EPA. Because some evidence adduced at trial would permit a reasonable jury to conclude that Virginia Tech violated the EPA, judgment as a matter of law is improper.

### ii. Maron's Retaliation Claim

To establish a prima facie case of retaliation, Maron was required to prove that she (1) engaged in protected activity, (2) Virginia Tech acted adversely against her, and (3) the protected activity and adverse action were causally connected. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). For the Court to enter judgment as a matter of law in Maron's retaliation claim, there must be no evidence in the trial record allowing a reasonable jury to

conclude that Virginia Tech retaliated against Maron. If there is no evidence supporting any of the three elements of retaliation, judgment as a matter of law should be entered.

To show that Virginia Tech acted adversely against her, Maron introduced evidence that Virginia Tech denied her permission to go to a non-required training conference, Virginia Tech required her to produce receipts to receive travel reimbursement when the original receipts had been lost, and that Virginia Tech imposed extended job performance benchmarks on her. To establish that these events constituted adverse employment actions, Maron was required to show that Virginia Tech's actions could dissuade a reasonable employee from complaining about discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Supreme Court has been clear that "petty slights, minor annoyances, and simple lack of good manners" do not count *Id.* The issue before the Court therefore is whether a reasonable jury could find that Virginia Tech's conduct could have dissuaded a reasonable person from complaining about discrimination.

Viewing the evidence in the light most favorable to Maron, a reasonable jury could find that, at most, Maron suffered a "petty slight" and not a materially adverse action. Maron was never demoted or fired, and Virginia Tech never lowered her salary. At the time Maron resigned, she was eligible for a promotion and five percent raise. Moreover, all fundraisers at Virginia Tech have performance benchmarks which they are expected to meet, and when fundraisers do not meet those benchmarks, they can expect that Virginia Tech will hold them in lower esteem and potentially take action. No trial evidence demonstrated that Maron's benchmarks were objectively unreasonable. Furthermore, other Virginia Tech fundraisers testified that when their original receipts were lost, they had to furnish new ones to Virginia Tech to receive travel reimbursement. None of the trial evidence would allow a reasonable jury

8

conclude that Maron suffered an adverse employment action. Therefore judgment as a matter of law in favor of Virginia Tech is proper.

### c. New Trial

Unlike Rule 50, Rule 59 permits the Court to weigh the evidence and credibility of the witnesses in determining whether the jury reached an acceptable verdict. *Cline*, 144 F.3d at 301. If the clear weight of the evidence demanded a verdict for Virginia Tech, a new trial is appropriate. *Id.* Under the EPA, once a plaintiff establishes a prima facie case of disparate pay, the burden of proof shifts to the employer to prove that the disparity was because of 1) seniority, 2) merit, 3) objective performance, or 4) another gender-neutral reason. 29 U.S.C. § 206(d). In this case, Virginia Tech argued exception number four, that any pay disparity between the Plaintiffs and their male comparators was due to a gender-neutral factor. At this Rule 59 stage, the Court must weigh the evidence and credibility of the witnesses and determine whether Virginia Tech proved that it paid Plaintiffs according to a gender-neutral standard.[3] If the evidence clearly weighed in Virginia Tech's favor, a new trial is warranted.

The evidence admitted at trial weighed strongly in Virginia Tech's favor. Virginia Tech produced evidence that the Plaintiffs' salaries were appropriate relative to similarly situated male comparators, which, in the Court's view, clearly demonstrates that it did not treat the Plaintiffs any differently because they were women. The Plaintiffs did not adequately rebut Virginia Tech's evidence. Accordingly, a new trial is proper in this case as the jury's original verdict was against the clear weight of the evidence.

---

[3] At the outset, the Court notes its concern that a lay jury might lack the appropriate background or knowledge to determine exactly what fundraisers should be paid relative to one another. Many factors must necessarily inform salary determinations, and a lay jury may not be in the best position to make such determinations of employee value in cases such as this.

9

At trial, the Plaintiffs proffered three similarly situated male comparators whose salaries were higher than the Plaintiffs'. Virginia Tech countered by proffering four similarly situated male comparators whose salaries were lower than the Plaintiffs', and one whose salary was basically identical. The jury therefore had a pool of ten similarly situated Virginia Tech fundraisers, eight men and the two female plaintiffs, to analyze whether the Plaintiffs received less pay because they were female. Maron's starting salary was $49,000 per year and Hanes' starting salary was $53,500 per year. Maron held both a Bachelor's and Master's degree and had no transferable sales experience. Hanes held a Bachelor's degree and had five years of transferable sales experience.

By comparison, Brian Thornburg, who made $3,000, held both a Bachelor's and Master's degree and had no transferable sales experience. Erik Kahill, who made $40,273, held a Bachelor's degree and had one year of transferable sales experience. John King, who made $46,000, held a Bachelor's degree and had no transferable sales experience. Joshua Tessar, who made $48,000, held a Bachelor's degree and had two years of transferable sales experience. Scott Davis, who made $49,500,000, held both a Bachelor's and Master's degree and had two years of transferable sales experience. All of these men had resumes similar to the Plaintiffs in terms of education and relevant sales experiences. Yet, other than Davis, who made $500 more than Maron, all of these men made less than the Plaintiffs. This comparator evidence strongly suggests that Virginia Tech did not violate the EPA.

To counter, the Plaintiffs introduced three higher paid male comparators. Benjamin Grove, with a Bachelor's degree and three years of transferable sales experience, made $61,000. James Grove, with a Bachelor's degree and fourteen years of transferable sales experience, made $63,000. Christopher Lawson, with a Bachelor's degree and eleven years of transferable sales

10

experience, made $67,000. Both James Grove and Lawson, the two highest paid male comparators, had significantly more experience than the Plaintiffs. Lawson had twice the experience of Hanes, and James Grove had three times more experience. Both had infinitely more transferable experience than Maron. Benjamin Grove had less transferable sales experience than Hanes, but more than Maron. However, his previous salary was $61,000, which Virginia Tech matched to recruit him.

Viewing the comparator evidence as a whole, it is clear that Virginia Tech did not compensate on the basis of gender; Virginia Tech compensated on the basis of experience. This comports with testimony from Corvin and Flanagan who stated that the best predictor of future fundraising success is past sales experience. The comparator evidence could not be clearer: Virginia Tech's compensation decisions were driven by legitimate, gender-neutral concerns. The Plaintiffs produced no credible evidence at trial demonstrating that "relevant sales experience" was merely a pretext for discrimination. Because the jury's finding that Virginia Tech violated the EPA is against the clear weight of the evidence, a new trial is proper.

## IV. Conclusion

Liquidated damages are improper in this case. Judgment as a matter of law will not be entered in the Plaintiffs' EPA claim because there was some trial evidence from which a reasonable jury could have theoretically found a violation. However, the clear weight of the evidence favors Virginia Tech. Accordingly, the Court will grant a new trial. No evidence admitted at trial supports a finding that Virginia Tech retaliated against Maron and judgment as a matter of law will be entered for Virginia Tech on that claim

An appropriate Order shall issue this day.

ENTER: This _29th_ day of June, 2011.

_____
Senior United States District Judge